UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Shlomy Halawani, individually and on behalf of a
class of others similarly situated,

    Plaintiff,   **CASE NO.** 0:18cv63127

v.   **CLASS ACTION**

Axzes, LLC,   **Jury Trial Demanded**

    Defendant.
_____/

**COMPLAINT**

    1.    Aimed at protecting consumer privacy, the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") prohibits, except in limited circumstances, the use of "automatic telephone dialing systems" to call cellular telephones. Specifically, the TCPA prohibits "any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1)(A). The TCPA also bans unsolicited telephone marketing calls, including text messages, to members on the national Do-Not-Call list, regardless whether those calls are made using an automatic telephone dialing system or manually dialed.

    2.    This year Plaintiff, Shlomy Halawani ("Plaintiff"), began receiving unsolicited text message solicitations on his cellular telephone. The content of the messages indicate that they were placed by or on behalf of Axzes, LLC ("Defendant").

3. At all times relevant herein, including at least the 31 days prior to receipt of the first alleged text message, Plaintiff's cellular telephone number was registered with the national do-not-call registry of persons who do not wish to receive telephone solicitations. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. 47 C.F.R. § 64.1200(c)(2).

4. Accordingly, Plaintiff brings this action against Defendant under the TCPA on behalf of himself and others similarly situated. Plaintiff seeks statutory damages for himself and the classes defined below, along with an injunction prohibiting Defendant from making impermissible, TCPA violative calls in the future.

## JURISDICTION AND VENUE

5. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740 (2012).

6. Venue is proper in the District because a substantial portion of the events complained of occurred here, i.e., Defendant directed their telemarketing text messages into this judicial district.

## PARTIES

7. Plaintiff Shlomy Halawani ("Plaintiff") is a natural person whom, at all times relevant to this action, was and is a resident of Broward County, Florida.

8. Defendant is a Florida limited liability company whose principal office is located 14973 SW 22nd Street, Miami, FL, 33185 and whose registered agent for service of process is Fernando Torres, 14973 SW 22nd Street, Miami, FL, 33185.

9. Defendant owns and operates an insurance agency that provides home, auto, commercial, flood, health and life insurance in the South Florida region of the United States.

## FACTUAL ALLEGATIONS RELATING TO PLAINTIFF

10. Plaintiff has been receiving unsolicited text message solicitations on his cellular telephone from Defendant without his prior express written consent. The content of the messages indicate that they were placed by or on behalf of Defendant.

11. The following is an example of a text message received on October 24, 2018:

> Text Message
> Today 2:20 PM
>
> Questions about health insurance? You don't have to wait until November 1st to get your answers. Your local Florida Blue agency could help you. Learn more
>
> http://agle.cc/sms/vafhenaprangvba-MOVyj1VQm

12. The link provided in the text message sends consumers like Plaintiff to Defendant's website which solicits the purchase of several types of insurance products.

13. At no time did Plaintiff ever provide consent for Defendant to send Plaintiff marketing text messages.

14. At all times relevant herein, including at least the 31 days prior to receipt of the first alleged text message, Plaintiff's cellular telephone number was registered with the national do-not-call registry of persons who do not wish to receive telephone solicitations.

## TEXT MESSAGES PROVIDE TELEMARKETERS WITH INSTANT COMMUNICATION TO CONSUMERS TO PROMOTE GOODS AND SERVICES

15. In recent years, marketers stymied by federal laws limiting solicitation by

telephone, facsimile machine, and email have increasingly looked to alternative technologies through which to send bulk solicitations to consumers easily and cheaply.

16. One of the newest methods of bulk marketing is to advertise through text messages sent to mobile phones.

17. Unlike faxes and unanswered phone calls, a text message allows virtually instantaneous communication with the recipient, almost anywhere in the world, day or night. Many cell phones immediately alert the recipient of new text messages. Consumers frequently use text messaging to stay in close contact with business colleagues and associates, family members, and friends. Text messaging is also used by schools, police departments, fire departments, and emergency medical services across the country.

18. The instantaneous nature of text message communication makes it very appealing to telemarketers—and very annoying to consumers subjected to spam text messages.

19. And unlike other forms of advertisement, spam texts can cost its recipients money.

20. Spam text messages are a burgeoning phenomenon. One authority estimates that Americans received more than four billion spam texts in 2011 more than double the number sent just two years earlier.

## OVERVIEW OF THE TCPA

21. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy . . . ." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227). Specifically, in enacting the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("Robocalls"), finding:

> Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
>
> . . . .
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call . . . , is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Id. § 2(10) and (12); *See also Mims v. Arrow Financial Services, Inc.*, 132 S.Ct. 740 (Jan. 18, 2012).

22. While imposing general restrictions on a wide set of telemarketing practices, the TCPA's strictest provisions apply to telemarketing by automatic telephone dialing system. *See* 47 U.S.C. § 227(b)(1).

23. The statutory definition of an automatic telephone dialing system (sometimes called "autodialer") is "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator to dial the numbers[,]" and has the capacity to dial such numbers. Id. § 227(a)(1). The term also extends to predictive dialers and equipment that has the capacity to dial numbers without human intervention. *See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14093 (2003).

24. With the limited exception of calls made for emergency purposes, the TCPA bans all calls to cell phones placed through an autodialer, regardless of whether they solicit the sale of goods or services, unless the recipient of the call provides "prior express consent" to receive the calls. 47 U.S.C. § 227(b); 47 C.F.R. § 64.1200(a)(1).

25. "Prior express consent" exists where a consumer has (a) clearly stated that the telemarketer may call, and (b) clearly expressed an understanding that the telemarketer's subsequent call will be made for the purpose of encouraging the purchase of goods or services.

*See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 F.C.C.R. 12391, 12396, para. 11 (1995).

26. Under FCC regulations, telemarketing calls require prior express **written** consent. 47 C.F.R. § 64.1200(a)(2).

27. "Prior express written consent" means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(8).

28. A text message is a call within the meaning of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir.2009).

**Vicarious Liability**

29. Under the TCPA, as interpreted by the FCC, a person or entity can be liable for calls made on its behalf even if that person or entity did not directly dial those calls.

30. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In the Matter of* Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 10 F.C.C Rcd. 12391, 12397 (1995).

31. In 2008, the FCC reiterated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 565 (2008)

(specifically recognizing "on behalf of" liability in the context of a robocall sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)).

32. In May of 2013, the FCC reinforced this issue. *See In the Matter of the Joint Petition Filed by Dish Network*, LLC, 28 F.C.C. Rcd. 6574 (2013) (hereinafter "2013 FCC Ruling Order") (clarifying that "a seller … may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services."). The FCC rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id*. n.107.

33. The 2013 FCC Order further explained:

"To provide guidance in this area, we find that the following are illustrative examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations. For example, apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. At a minimum, evidence of these kinds of relationships – which consumers may acquire through discovery, if they are not independently privy to such information – should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent.

"[ ] In sum, under our current rules and administrative precedent interpreting and implementing sections 227(b) and 227(c), we do not think that an action taken for the benefit of a seller by a third-party retailer, without more, is

sufficient to trigger the liability of a seller under section either section 227(c) or section 227(b). **However, we see no reason that a seller should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services.** In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised. In the case of either actions to enforce section 227(b) or actions to enforce do-not-call restrictions under section 227(c), we stress that nothing in this order requires a consumer to provide proof – at the time it files its complaint – that the seller should be held vicariously liable for the offending call. (emphasis added)

Id. at ¶¶ 46-47).

34. Accordingly, it is undeniably clear, that an entity can be liable under the TCPA for a call made on its behalf even if the entity did not directly place the call under a number of theories, including vicarious liability. Under those circumstances, the entity is properly deemed to have initiated the call through the person or entity that actually placed the calls.

## CLASS ALLEGATIONS

35. Plaintiff brings this action on behalf of two (2) nationwide classes of similarly situated individuals, the first of which consists of:

> **The ATDS Class: All persons in the United States to whom, within the four years immediately preceding the filing of this Complaint, Defendant or some person acting on Defendant's behalf sent one or more text messages to their cellular telephone advertising Defendant's goods and/or services, through the use of the same or materially similar telephone dialing equipment as that which was used to send the texts at issue to the Plaintiff.**

36. Plaintiff is a member of the ATDS Class.

37. The second class consists of:

> **The DNC Class: All persons in the United States to whom, within the four years immediately preceding the filing of this Complaint, Defendant or some person acting on Defendant's behalf sent one or more text messages to their cellular telephone advertising Defendant's goods and/or services, while the subject cellular telephone number was registered on the National Do-Not-Call list for more than 31 days.**

38. Plaintiff is a member of the DNC Class.

39. Defendant and their employees or agents, Plaintiff's attorneys and their employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress are excluded from the Classes.

40. The Classes are so numerous and geographically widespread that joinder is impracticable. Upon information and belief, as well as common experience of the size of automated dialing campaigns, there are easily more than one thousand persons in each Class.

41. Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting any individual member of the Classes, including Plaintiff. Such questions common to the Classes include, but are not limited to:

   a. Whether the calls that are the subject of this lawsuit were made using an "automatic telephone dialing system" as proscribed by the TCPA and applicable FCC regulations and orders;

   b. Whether the calls that are the subject of this lawsuit were made to individuals whose cellular telephone was registered on the national do not call registry.

   c. Whether the violation was negligent or willful.

42. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has no interests that might conflict with the interests of the Class. Plaintiff is interested in pursuing his claims vigorously and has retained counsel competent and experienced in class and complex litigation.

43. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of

similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

44. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

45. Defendant has acted on grounds generally applicable to the Classes, thereby making relief appropriate with respect to the Classes as a whole.

46. Prosecution of separate actions by individual members of the Classes, should they realize their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct.

47. The identity of the Class Members is likely readily identifiable from Defendant's records, or the records of other person(s) involved with making the calls.

48. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

## COUNT I
### Violation of 47 U.S.C. § 227(b) and the Regulations Promulgated Thereunder
(On Behalf of Plaintiff and the ATDS Class)

49. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

50. It is a violation of the TCPA, 47 U.S.C. §227(b) to call a person's cellular telephone using an automatic telephone dialing system. The TCPA also specifically prohibits the use of an unsolicited text messages to advertise the sale of goods and services. 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200.

51. Defendant, or some person on its behalf, sent one or more text messages to plaintiff and others' cellular telephones, using an automatic telephone dialing system and/or an artificial or prerecorded voice without Plaintiff's or the class members' express written consent.

52. The Defendant's text messages were negligently placed, or alternatively, willfully placed despite prior knowledge of the TCPA.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of himself and the class and against Defendant that provides the following relief:

a. Statutory damages of $500 per violation, and up to $1,500 per violation if proven to be willful;

b. A permanent injunction prohibiting Defendant from violating the TCPA in the future through calling cell phones using an automatic telephone dialing system and/or a prerecorded voice message;

c. A declaration that Defendant used an automatic telephone dialing system and artificial or prerecorded voice, and violated the TCPA in using such for calls to the cell phones of plaintiff and the class; and

d. Any other relief the Court finds just and proper.

### COUNT II
### Violation of 47 U.S.C. § 227(c) and the Regulations Promulgated Thereunder
#### (On Behalf of Plaintiff and the DNC Class)

53. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

54. It is a violation of the TCPA, 47 U.S.C. §227(c) to call a person who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200.

55. Defendant, or some person on its behalf, sent one or more marketing text messages to Plaintiff and others' cellular telephone numbers when said numbers had been registered on the national do-not-call registry for more than 31 days.

56. Such text messages were sent without Plaintiff's or the class members' express written consent.

57. The Defendant's text messages were negligently placed, or alternatively, willfully placed despite prior knowledge of the TCPA.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of himself and the class and against Defendant that provides the following relief:

a. Statutory damages of $500 per violation, and up to $1,500 per violation if proven to be willful;

b. A permanent injunction prohibiting Defendant from violating the TCPA in the future through calling cell phones registered with the national do-not-call registry;

c. A declaration that Defendant made calls to numbers registered with the national do-not-call registry, and violated the TCPA in making such calls to the cell phones of Plaintiff and the class; and

d. Any other relief the Court finds just and proper.

### JURY DEMAND

58. Plaintiff demands trial by jury.

Dated:  December 22, 2018

                Respectfully submitted,

                By: /s/ Jibrael S. Hindi
                Jibrael S. Hindi, Esq.
                THE LAW OFFICE OF JIBRAEL S. HINDI, PLLC
                110 SE 6th Street
                Ft. Lauderdale, FL 33301
                Tel: (954) 907-1136
                Fax: (855) 529-9540
                jibrael@jibraellaw.com